J-S29035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PNC BANK, N.A., SUCCESSOR BY MERGER TO NATIONAL CITY BANK | : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| SENECA LEANDRO VIEW, LLC | | |
| Appellant | | No. 1471 WDA 2024 |

Appeal from the Order Entered October 31, 2024
In the Court of Common Pleas of Greene County Civil Division at No(s):
No. AD-435-2022

BEFORE:  NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED:  January 15, 2026**

Seneca Leandro View, LLC ("SLV") appeals from the order entered on October 31, 2024, in the Court of Common Pleas of Greene County, which granted summary judgment in favor of PNC Bank, N.A. ("PNC"), successor by merger to National City Bank, in this mortgage foreclosure action.  We affirm.

**Background**

In October 2000, Michael Litwinovich and Margaret Litwinovich, both now deceased, obtained an open-end home equity line of credit ("HELOC") from National City Bank with a maximum limit of $31,000.00, set to mature in October 2010.  **See** Complaint, 6/21/22, at Exhibit B ("HELOC Agreement"); SLV's Brief at 12-13; **see also id.** at Exhibit A (certifying that PNC is the successor by merger to National City Bank).  The HELOC was secured by a mortgage on the Litwinoviches' residential property located at 197 North

Liberty Street, Waynesburg, PA 15370 ("Mortgaged Premises"), which was recorded in the Greene County Office of the Recorder of Deeds on October 23, 2000. *See id.* at Exhibit C ("Mortgage"). In 2010, the line of credit was extended for an additional ten years, maturing in October 2020. *See* SLV's Response to Motion for Summary Judgment, 9/18/23, at 1 (unnumbered).

On September 16, 2020, SLV purchased the Mortgaged Premises at an upset tax sale and became the record owner of said property by virtue of a deed executed and recorded in the Greene County Office of the Recorder of Deeds on December 15, 2020, at Book 542, Page 569. *See id.* at 2 (unnumbered); *see also id.* at Exhibit 2 ("SLV Deed").

On June 21, 2022, PNC initiated an action against SLV, seeking an *in rem* judgment in mortgage foreclosure in the amount of $33,575.09, plus interest, fees, and costs. *See generally* Complaint at ¶¶ 1-12; *see also id.* at ¶ 7 (alleging that SLV is in default under the terms of the line of credit and mortgage "for failing to tender payments when due"). In response, SLV filed preliminary objections to the complaint on four separate grounds, all of which were ultimately denied by the trial court. *See generally* Preliminary Objections, 8/15/22; *see also* Order, 1/11/23. Thereafter, SLV filed an answer to the complaint along with new matter, to which PNC filed a reply. A pretrial conference was held on March 28, 2023, and the trial court ordered discovery to be completed by June 30, 2023.

On August 17, 2023, PNC filed a motion for summary judgment, asserting that it was entitled to a judgment in foreclosure as a matter of law.

*See* Motion for Summary Judgment, 8/17/23, at 1-2; Brief in Support of Motion for Summary Judgment, 8/17/23, at 4-7 (asserting that PNC has pled all elements necessary to obtain a judgment in mortgage foreclosure and that SLV has failed to raise an issue of material fact). In its response, SLV argued that the complaint baldly averred a principal balance due in the amount of $30,696.07, and failed to aver that the Litwinoviches ever used any portion of the line of credit. *See* SLV's Response to Motion for Summary Judgment, 9/18/22, at 2 (unnumbered). It explained:

> Rather than provide for an automatic disbursement of funds, [the line of credit executed by the Litwinoviches] merely granted [them] the **option** to borrow periodically against their house, up to a maximum of $31,000.00. … [T]here was no fixed monthly payment due under the terms of the agreement. Instead, in the event that the Litwinoviches made use of [the] line of credit, the minimum payment due was set at 1.5% of the new balance, the total finance charge depicted on the new statement, or $100.00 (or whatever portion of $100.00 is necessary to pay [National City Bank] in full), whichever is the greatest. It therefore follows, that if no use of the line of credit occurred, no monthly payment would be due. If no monthly payment was due, then no default could have ever occurred.

*Id.* at 5 (unnumbered; format altered; emphasis in original).

SLV further averred that it sought clarification from PNC regarding the amount owed on the line of credit to no avail. *Id.* at 3. For instance, on July 27, 2022, SLV sent a qualified written request to PNC's counsel for "certain information required to be disclosed by the Real Estate Settlement Procedures Act [('RESPA'), 12 U.S.C. §§ 2601-2617.]" *Id.* Yet no response was received. *Id.* In addition, on May 25, 2023, SLV served PNC with discovery, which

included a request for "a full payment history showing all payments made by [the Litwinoviches] for the [m]ortgage at issue in this action." *Id.* Again, SLV indicated that PNC failed to produce the requested documents. *Id.*

The trial court agreed with SLV that PNC's failure to include any evidence of a disbursement of funds pursuant to the HELOC Agreement precluded the entry of summary judgment. *See* Order, 1/5/24, at 2 ("As the disbursement of funds is a genuine issue of material fact that has not been set forth in the record, the right to summary judgment is far from clear and free from doubt."). Accordingly, it entered an order denying PNC's motion for summary judgment. *Id.* at 1-2.

Recognizing that the foreclosure action was ripe for litigation, the trial court scheduled a pretrial conference for March 26, 2024, which was later postponed to June 25, 2024. In the meantime, PNC filed a renewed motion for summary judgment, in which it alleged that there was no longer a genuine issue as to any material fact and that PNC is entitled to judgment as a matter of law. *See* Renewed Motion for Summary Judgment, 6/11/24, at 1. It declared that since the entry of the trial court's January 5, 2024 order denying its original summary judgment motion,

> [PNC] has supplemented its discovery and produced 717 pages of statements and accounting dating back to December 2003. These documents provide information on disbursements and payments from 2003 through 2023[,] with final disbursements in 2019. The documents evidence varying amounts advanced over the course of nearly fifteen (15) years. A true and correct copy of [the] account statements are attached to the Appendix as Exhibit "4[."]

Brief in Support of Renewed Motion for Summary Judgment, 6/11/24, at 2;
*see also id.* at 2-3 (adding that the account statement for the period ending
on March 23, 2020, reflects $0.00 available credit, "meaning the borrower
maxed out the home equity loan"); *id.* at 3 (noting that the documents
produced confirm a payoff balance of $38,082.74, at the time PNC filed its
renewed motion for summary judgment); *see also id.* at 2 (concluding that
summary judgment is appropriate at this time, as "the sole issue that
previously precluded entry of summary judgment has been put to rest through
the evidence provided").

SLV filed a response, arguing, *inter alia*, that the documents produced
by PNC are untimely and therefore should be excluded. *See* SLV's Response
to Renewed Motion for Summary Judgment, 7/10/24, at 5-7. SLV contended
that, despite its qualified written request and demand for production of
documents,

> PNC resisted producing the necessary statements until well after
> the expiry of the June 30, 2023 discovery deadline. Now, only
> after their first motion for summary judgment was denied, have
> they attempted to ambush [SLV] with documents purportedly in
> support of this renewed motion. [PNC's] failure to comply with
> discovery requests until well after the close of discovery must
> have consequences; specifically, … such untimely produced
> documents should be excluded.

*Id.* at 6 (cleaned up). SLV stated that, "[w]ithout these new documents, the
same genuine issue of material fact … remains[,]" *i.e.*, whether disbursements
of funds were made to the original borrowers. *Id.*; *see also* Order, 1/5/24,
at 2.

- 5 -

On September 3, 2024, PNC filed a reply brief, wherein it argued that no sanctions are warranted, maintaining that it fully complied with all discovery requests in this matter. **See** PNC's Reply to SLV's Response to Renewed Motion for Summary Judgment, 9/3/24, at 2. It stated:

Discovery was scheduled to be completed on June 30, 2023[,] with dispositive motions due on or before August 21, 2023[,] per [the trial] court's order of March 28, 2023. [SLV] waited almost two entire months before serving its interrogatories and requests for production of documents and related interrogatories [on] May 25, 2023. PNC sought and was granted an extension to respond to these discovery requests by [SLV's] counsel. PNC's responses were then served on July 20, 2023.

[SLV] did not contact PNC regarding any supposed deficiency with these discovery responses, nor did [SLV] seek leave of court to re-open the discovery process at that time. With discovery completed and a dispositive motions deadline looming, PNC filed its motion for summary judgment [on] August 17, 2023. [SLV] filed its response to PNC's motion for summary judgment on September 15, 2023. On September 19, 2023, [the trial] court entered an order scheduling argument on the motion for summary judgment on November 15, 2023.

Yet[,] just six days before the scheduled hearing, on November 9, 2023, [SLV] claimed that it required additional discovery and served an untimely motion to compel answers to interrogatories and production of documents that was noticed for presentation on November 16. The hearing on the motion for summary judgment proceeded as scheduled[,] and [the trial] court ultimately issued an order denying PNC's motion for summary judgment on January 5, 2024[,] based on [SLV's] argument that there was insufficient evidence concerning the disbursement of funds. [SLV] never actually presented its motion to compel and so the court never ruled on any issues related to it.

PNC reviewed [the trial] court's order denying summary judgment, and on its own accord and without any renewed request by [SLV], opted to supplement its document production with 717 pages of material setting forth the loan's history and record of disbursement[s]. These documents constituted the exact

documents that [SLV] claimed were required before summary judgment could be entered. They were delivered to [SLV's] counsel by federal express on or around March 19, 2024. In similar fashion to the last time PNC served discovery responses and documents, [SLV] did nothing upon receiving these documents. Consequently, PNC filed its renewed motion for summary judgment on June 11, 2024, nearly [three] months after supplementing its document production to [SLV].

*Id.* at 2-4 (cleaned up).

PNC concluded that it

has fully complied with discovery obligations in good faith. PNC has given all relevant and non-privileged material to [SLV,] and the actual evidence of record has resolved any issue of fact concerning the disbursement history of the loan that may have existed at the time of PNC's initial motion for summary judgment. [SLV's] own failure to proceed with diligence to obtain information in support of its defenses is not PNC's fault[,] and there are no factual or legal grounds to support [SLV's] request that [the trial] court penalize PNC by excluding evidence.

*Id.* at 5.

On October 31, 2024, the trial court entered an order granting PNC's renewed motion for summary judgment. *See* Order, 10/31/24, at 1-3; *see also id.* at 2 ("While we're disappointed in the production which supports this motion not having been provided with initial discovery, we are unable to see any genuine issues of material fact which would prevent a grant of summary judgment."). SLV filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Subsequently, the trial court issued a statement pursuant to Rule 1925(a), in which it relied on the reasoning set forth in its October 31, 2024 order and indicated that no further Rule 1925(a) opinion would be filed.

**Issues**

SLV presents the following questions for our review:

1. Did the trial court err in granting summary judgment to [PNC] despite PNC's failure to respond to [SLV's] qualified written request under [RESPA], where such failure deprived [SLV] of critical loan information and potentially established affirmative defenses and statutory claims under 12 U.S.C. § 2605(f)?

2. Did the trial court err by granting summary judgment while disregarding PNC's failure to comply with discovery obligations, including withholding responsive documents until after the denial of its initial summary judgment motion and beyond the discovery deadline, thereby obstructing SLV's ability to develop its defenses?

3. Did the trial court abuse its discretion by considering voluminous loan documents belatedly[]produced by PNC in support of its renewed summary judgment motion, effectively rewarding PNC's violations of discovery rules and RESPA?

4. Did the trial court err in finding no genuine issue of material fact existed regarding the validity of the debt, the accuracy of PNC's accounting, and the occurrence of a default, particularly given PNC's failure to provide timely and complete discovery, including disbursement records?

5. Did the trial court fail to properly apply the summary judgment standard by not resolving all doubts and inferences regarding material facts in favor of … SLV, especially concerning the disputed debt and PNC's discovery conduct?

6. Did the trial court err in entering summary judgment in mortgage foreclosure against SLV without addressing SLV's distinct status as a successor owner via tax sale, which does not entail personal liability for the original borrower's debt?

SLV's Brief at 5-6 (numbering added).[1]

_____

[1] We note with disapproval SLV's failure to conform its brief to the Pennsylvania Rules of Appellate Procedure.  In particular, the argument section is not divided into appropriate subsections which correspond to the
*(Footnote Continued Next Page)*

## Standard of Review

We begin with our standard of review of a trial court order granting summary judgment:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule, Pa.R.C[iv].P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261-62 (Pa. Super. 2013) (citation omitted).

To the extent that SLV's claims present questions of statutory interpretation, which are purely legal issues, our standard of review is plenary

---

questions presented. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein…."). Nevertheless, as this defect does not substantially impair our ability to review the issues presented, we will proceed to address the merits of SLV's claims and will do so in the order that they appear in the argument section of SLV's brief.

and non-deferential.  *See Dahl v. AmeriQuest Mortg. Co.*, 954 A.2d 588,

593 (Pa. Super. 2008) (citation omitted).  As we explained in *Dahl*:

> The objective of statutory interpretation and construction is to ascertain and effectuate the intention of the legislature.  1 Pa.C.S.[] § 1921(a).  "Where the intent of the legislature is clear from the plain meaning of the statute, there is no need to pursue statutory construction."  *Commonwealth v. Alexander*, 811 A.2d 1064, 1066 (Pa. Super. 2002), *appeal denied*, … 822 A.2d 703 ([Pa.] 2003) (citing *Commonwealth v. Packer*, … 798 A.2d 192, 196 (Pa. 2002)).  "Only when the language of the statute is ambiguous does statutory construction become necessary."  *Id.* When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.  1 Pa.C.S.[] § 1921(b).

*Id.* at 593-94 (citation omitted).

## Discussion

I.   *RESPA*

SLV claims that the trial court erred in granting summary judgment in

favor of PNC, "despite PNC's clear violation of [RESPA]."  SLV's Brief at 20.

Specifically, it contends that PNC's failure to respond to SLV's qualified written

request ("QWR")[2] constitutes a violation of RESPA, and that such failure

_____

[2] Section 2605 of RESPA defines a 'qualified written request' as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that[:] (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B) (format altered).

"directly hampered SLV's ability to investigate and challenge the alleged debt, thereby leaving unresolved genuine issues of material fact essential to PNC's foreclosure claim." *Id.*; *see also id.* at 22-24.

SLV explains:

RESPA imposes a clear duty upon mortgage loan servicers to respond to borrower inquiries submitted in the form of a QWR. *See* 12 U.S.C. § 2605(e). … Upon receipt of a QWR, the servicer must provide a written acknowledgment within 5 business days and, within 30 business days, must either make appropriate corrections to the account or conduct an investigation and provide a written explanation including the information requested or the reasons why it is unavailable. 12 U.S.C. § 2605(e)(1)(A), (e)(2).

On July 27, 2022, well before PNC moved for summary judgment, SLV … sent a detailed QWR to PNC. This QWR clearly identified SLV, referenced the loan and [Mortgaged Premises], stated [that] SLV disputed the amount alleged due in PNC's complaint, and requested specific, itemized information essential to understanding and verifying the alleged debt under the HELOC Agreement. The requested information included, *inter alia*: monthly principal, interest, and escrow breakdowns since the loan's inception; details of any alleged unpaid amounts; a complete payment history showing application of funds; records of all fees and charges assessed; [an] escrow account analysis; and the current interest rate. This information was critical for SLV, as a successor owner unfamiliar with the loan's history, to ascertain the validity of PNC's claim.

*Id.* at 20-21 (cleaned up).

PNC contends, however, that it had no duty under RESPA to respond to SLV's qualified written request for information, because RESPA does not apply to the HELOC at issue here. *See* PNC's Brief at 10-14; *see also id.* at 11 (stating that both 10 Pa. Code § 59.3 and 12 C.F.R. § 1024.31, which implement RESPA, expressly exclude open-end lines of credit); *id.* at 12

(arguing, alternatively, that even if RESPA did apply to the HELOC in this matter, PNC would still not have been obligated to respond to SLV's QWR because SLV does not qualify as a "borrower" under RESPA).

For the following reasons, we agree with PNC. RESPA was enacted based on congressional findings of the need for significant reform in the residential real estate settlement process. **See** 12 U.S.C. § 2601(a). "RESPA's principal purpose is to protect home buyers from material nondisclosures in settlement statements and abusive practices in the settlement process, both in the actual settlement process and in the servicing of a federally related mortgage loan." **Bordoni v. Chase Home Finance LLC**, 374 F.Supp.3d 378, 383 (E.D. Pa. 2019) (internal quotation marks and citation omitted).[3]

As of July 21, 2011, the responsibility for administering and enforcing RESPA was transferred from the U.S. Department of Housing and Urban Development ("HUD") to the Consumer Financial Protection Bureau ("CFPB"), pursuant to Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, 124 Stat. 1376. **See** Michelle L. Evans, J.D., *Litigation of Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.[] §§ 2601 et seq.*, *in* 171 Am. Jur. Trials

---

[3] "While we recognize that federal district court cases are not binding on this [C]ourt, Pennsylvania appellate courts may utilize the analysis in those cases to the extent we find them persuasive." **Umbelina v. Adams**, 34 A.3d 151, 159 n.2 (Pa. Super. 2011) (citations omitted).

79 at § 3 (2021) (citations omitted).  Accordingly, the CFPB adopted new regulations to implement RESPA, which are codified at 12 C.F.R. §§ 1024.1-1024.41 ("Regulation X").  *See* 12 C.F.R. § 1024.1; *see also* 10 Pa. Code § 59.1 (stating that Chapter 59 of Title 10 of the Pennsylvania Administrative Code, adopted on April 28, 2018, "is intended to set forth mortgage servicing criteria and standards that incorporate the [CFPB's] mortgage servicer regulations in [Regulation X], Subpart C (relating to mortgage servicing)").

Pertinent to this appeal, Section 2605 of RESPA imposes duties on servicers of federally related mortgage loans in receipt of a QWR from a borrower.  *See* 12 U.S.C. § 2605(e).  Those duties were implemented by the CFPB in Section 1024.36 of Regulation X, Subpart C (12 C.F.R. §§ 1024.30-1024.41).  *See* 12 C.F.R. § 1024.36; *see also* 10 Pa. Code § 59.8 (incorporating the criteria set forth in 12 C.F.R. § 1024.36).  Notably, Regulation X, Subpart C applies to "any mortgage loan, as that term is defined in § 1024.31[,]" subject to a few exceptions, which are not applicable here. 12 C.F.R. § 1024.30.  Section 1024.31 defines 'mortgage loan,' for the purposes of Subpart C, as "any federally related mortgage loan, as that term is defined in [Section] 1024.2 subject to the exemptions in [Section] 1024.5(b),[4] but **does not include open-end lines of credit (home equity plans)**."  12 C.F.R. § 1024.31 (emphasis added).  Similarly, the Pennsylvania

---

[4] For the purposes of this appeal, we need not reproduce the definition of a 'federally related mortgage loan' as set forth in 12 C.F.R. § 1024.2, or the related exemptions enumerated in 12 C.F.R. § 1024.5(b).

Administrative Code expressly states that, for the purposes of Title 10, Chapter 59, the term 'mortgage loan' "**does not include open-end lines of credit (home equity plans)**." 10 Pa. Code § 59.3 (emphasis added).

Because the foregoing statutes and regulations that implement the duties imposed by RESPA unequivocally exclude HELOCs, we conclude that PNC was not obligated under RESPA to respond to SLV's QWR.[5] Nevertheless, even if RESPA did apply, SLV has failed to convince us that such a violation would preclude the entry of summary judgment in PNC's favor. *See* 12 U.S.C. § 2605(f) (providing for monetary damages to compensate a borrower for actual damages incurred as a result of a servicer's failure to comply with Section 2605); Evans, *supra* at § 52 ("Failure to comply with Section 2605 of RESPA can result in liability for damages to the borrower for each failure[; h]owever, the borrower must not already be in default when the QWR is sent.") (footnotes omitted); *see also Tamburri v. Suntrust Mortg., Inc.*, 875 F.Supp.2d 1009, 1013 (N.D. Cal. 2012) (noting that RESPA does not provide for injunctive relief and, therefore, a RESPA claim cannot stop a foreclosure; "actual damages and … statutory damages[] are the only remedies available when a servicer violates the … provisions [of Section 2605]").

To the extent that SLV argues that our interpretation of RESPA — namely, that HELOCs are excluded from the duty imposed by RESPA on

---

[5] Due to our disposition, we need not address PNC's alternative argument that SLV does not qualify as a borrower under RESPA.

mortgage loan servicers to respond to a QWR — is "overly narrow[,]" we deem this argument meritless. SLV contends that "certain RESPA regulations may contain specific exemptions for HELOCs **in other contexts**," but insists that a servicer's duty under 12 U.S.C. § 2605(e) to respond to QWRs "applies broadly to 'federally related mortgage loans'" and that the HELOC at issue in this matter "squarely falls within [the] definition" of a 'federally related mortgage loan' for the purposes of Section 2605. SLV's Reply Brief at 3 (emphasis added). In support of its position, however, SLV relies solely on the definition of a 'federally related mortgage loan' as set forth in 12 U.S.C. § 2602(1),[6] and ignores the definitions stated in Regulation X and the Pennsylvania Administrative Code, which explicitly exclude HELOCs. **See** 12 C.F.R. § 1024.31; 10 Pa. Code § 59.3.

SLV makes no attempt to reconcile these definitions or to explain why the express language of 12 C.F.R. § 1024.31 and 10 Pa. Code § 59.3 does not apply here, nor does it provide any legal authority to support its argument. It is not the job of this Court to develop arguments for the appellant. **See Banfield v. Cortes**, 110 A.3d 155, 168 n.11 (Pa. 2015) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court

---

[6] **See** SLV's Reply Brief at 3 ("A 'federally related mortgage loan' is defined under 12 U.S.C. § 2602(1) to include, *inter alia*, any loan secured by a first or subordinate lien on residential real property designed for occupancy by one to four families.").

to formulate an appellant's arguments for him.") (cleaned up).  Thus, no relief is due on this claim.

Additionally, SLV asserts:

The fundamental purpose of the QWR provisions — to empower borrowers (or those standing in their shoes with a direct property interest) to request and receive critical information about their loan servicing and to correct errors — is paramount, especially when a property owner faces the drastic consequences of foreclosure.  To deny this crucial informational right **based on a hyper-technical reading** of 'mortgage loan' type, particularly when the servicer's actions and claims directly and imminently threaten SLV's ownership of the property, runs contrary to RESPA's explicitly stated consumer protection objectives, which include ensuring that consumers "are provided with greater and more timely information on the nature and costs of the settlement process and are protected from … abusive practices[.]"  12 U.S.C. § 2601(a).

SLV's Reply Brief at 3-4 (cleaned up; emphasis added).  As SLV offers no legal authority in support of the foregoing claim, we deem this argument waived. *See Banfield*, *supra*.  Notwithstanding, we note that absent an ambiguity, we will not ignore the plain language of the controlling statutes.  *See Koken v. Reliance Ins. Co.*, 893 A.2d 70, 82 (Pa. 2006) ("Where [statutory language] is unambiguous, the plain language controls, and it cannot be ignored in pursuit of the statute's alleged contrary spirit or purpose.").

II.  *Discovery*

Next, SLV avers that the trial court abused its discretion in "granting summary judgment based on evidence that PNC produced months after the discovery deadline and only after its initial summary judgment motion was denied."  SLV's Brief at 24.  It contends that in doing so, the trial court

"undermined fundamental principles of procedural fairness and effectively rewarded PNC's discovery violations." ***Id.***; ***see also id.*** at 26 (stating that the trial court's ruling "rewarded PNC for its discovery violations by allowing it a 'second bite at the apple' for summary judgment"). However, SLV fails to cite any authority in support of its position, nor does it engage in any meaningful discussion of the law. Instead, much of its argument consists merely of a regurgitation of the procedural history in this matter.

SLV makes one reference to our Rules of Civil Procedure, stating: "Pennsylvania courts possess the authority under Pa.R.C[iv].P. 4019 to impose sanctions for failure to make discovery, including the preclusion of evidence that was not timely disclosed." ***Id.*** Yet, again, this statement is not followed by any analysis of Rule 4019 or discussion of the law as it relates to this case. Rather, SLV makes only one additional, unsupported, conclusory statement in its reply brief: "The trial court's decision to accept and rely upon the[] late-produced documents without imposing any sanction on PNC or even formally acknowledging the significant prejudice to SLV … constitutes a clear abuse of discretion." SLV's Reply Brief at 12.

Due to SLV's failure to develop its argument, we deem this claim waived. ***See Umbelina***, 34 A.3d at 161 ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); ***see also Banfield***, ***supra*** (stating that this Court will not develop an argument on behalf of the appellant).

- 17 -

Notwithstanding waiver, we would deem SLV's claim that the trial court should have excluded PNC's 717-page document production from its consideration of PNC's renewed summary judgment motion to be meritless. The record establishes that PNC was granted an extension to respond to SLV's discovery requests. PNC then served its discovery responses on SLV in compliance with the new deadline. On November 9, 2023, six days before the scheduled hearing on PNC's original motion for summary judgment, SLV served counsel for PNC with a motion to compel answers to interrogatories and production of documents, along with a notice of presentation, indicating that the motion to compel would be presented to the trial court on November 16, 2023. However, according to PNC, SLV never actually presented the motion to compel, and so the trial court never ruled on the issues raised therein. **_See_** PNC's Brief at 16; **_see also_** Gr.Co.R. G208.3(a) (governing Greene County's motions practice).[7, 8]

---

[7] SLV does not expressly assert that it presented its motion to compel in compliance with the local rules. **_See generally_** SLV's Brief at 24-30. Moreover, based on our cursory review, we are unaware of any evidence in the record that the motion to compel was presented in compliance with Gr.Co.R. G208.3(a)(1)(b)(ii) (requiring that a motion "be presented in person in Motions Court after being filed with the appropriate court filing office").

[8] To the extent that SLV argues the trial court erred in failing to address its motion to compel, **_see_** SLV's Brief at 27-30, we are constrained to deem this claim waived due to SLV's failure to include the issue in its "Statement of the Questions Involved." **_See_** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); **_Wirth v. Com_**., 95 A.3d 822, 858 (Pa. 2014) ("[Rule 2116(a)] is to be considered in the highest degree mandatory, admitting of no exception;
*(Footnote Continued Next Page)*

Subsequently, the trial court issued an order denying PNC's request for summary judgment, agreeing with SLV that there was insufficient evidence concerning the disbursement of funds to the original borrowers. PNC contends that after reviewing the trial court's order, it decided "on its own accord and without any renewed request by [SLV] … to supplement its document production with 717 pages of material setting forth the loan's history and record of disbursements." PNC's Brief at 16; *see also id.* at 16-17 (emphasizing that SLV "did nothing after receiving these documents[,]" and noting that PNC waited nearly three months after supplementing its document production before filing its renewed motion for summary judgment).

PNC persuasively argues:

> There is nothing in the Pennsylvania Rules of Civil Procedure, the Local Rules of Greene County or Pennsylvania case[]law that prevents a party from unilaterally serving documents on the other party to cure a supposed deficiency in evidence that had prevented entry of summary judgment. Nor is doing so accurately characterized as a discovery violation.

_____

ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby."). The only two questions presented by SLV pertaining to discovery are issues 2 and 3. *See* SLV's Brief at 5-6. Issue 2 inquires whether the trial court erred "by granting summary judgment **while disregarding PNC's failure to comply with discovery obligations**…[.]" *Id.* at 5 (emphasis added). Issue 3 questions whether the trial court abused its discretion "**by considering voluminous loan documents belatedly[]produced by PNC…, effectively rewarding PNC's violations of discovery rules** and RESPA[.]" *Id.* (emphasis added). Both of these issues are directed at PNC's alleged discovery violations; neither issue mentions SLV's motion to compel whatsoever, or the trial court's failure to rule on said motion.

- 19 -

***

> Here, [SLV] had no actual defense to prevent summary judgment other than to seek to preclude PNC's evidence based on imagined discovery violations that never occurred. It was [SLV], not PNC, that failed to pursue discovery appropriately, whether through depositions, motions practice or otherwise.

*Id.* at 18.; *see also id.* at 17 (stating "there has never been a [c]ourt ruling … that PNC's discovery responses were deficient, much less that a discovery violation had occurred"). Nonetheless, even if PNC had committed a discovery violation, "the decision whether to sanction a party for a discovery violation and the severity of such a sanction are matters vested in the sound discretion of the trial court." *Eichman v. McKeon*, 824 A.2d 305, 316 (Pa. Super. 2003); *see also* Pa.R.Civ.P. 4019(a)(1) (providing that the court "**may**, on motion," impose sanctions on a party for any of the discovery violations enumerated in subsection (a)(1)) (emphasis added).

III.  *Genuine Issue of Material Fact*

SLV claims that the trial court erred in granting PNC summary judgment, because, "despite PNC's belated production of voluminous records, genuine issues of material fact persist regarding essential elements of its foreclosure claim." SLV's Brief at 30-31; *see also id.* at 32 (asserting that the "complex records" produced by PNC "raise more questions than they answer"). More specifically, SLV complains that PNC's document production did not include "copies of checks, withdrawal slips, or other primary evidence documenting the specific advances allegedly taken by the Litwinoviches." *Id.* at 32. It

argues that without these underlying documents, it is unable to adequately verify whether advances actually occurred in the amounts claimed. *Id.*

Additionally, SLV questions the general accuracy of PNC's accounting and the calculation of the amount claimed due. *Id.* at 33; *see also id.* at 35 (asserting that "[a]mbiguities or potential errors in the[] belatedly-produced records must be construed against PNC…"). Finally, SLV contends that a genuine issue exists as to whether and when a default occurred, as "it is impossible to determine from the current record … precisely when a required payment was missed or if PNC's declaration of default and acceleration was proper under the contract terms." *Id.* at 33. SLV concludes that "the trial court improperly resolved these factual disputes in favor of PNC, the moving party, rather than viewing the evidence in the light most favorable to SLV." *Id.* at 32-33.

> In considering the merits of SLV's claim, we are guided by the following:
>
> [T]he holder of a mortgage has the right, upon default, to initiate a foreclosure action. Additionally, the mortgage holder is entitled to summary judgment if the mortgagor admits that the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified amount.

*Gerber v. Piergrossi*, 142 A.3d 854, 859 (Pa. Super. 2016) (internal quotation marks and citations omitted). "This is so even if the mortgagors have not admitted the total amount of the indebtedness in their pleadings." *Cunningham v. McWilliams*, 714 A.2d 1054, 1057 (Pa. Super. 1998).

"In response to a summary judgment motion, the nonmoving party cannot rest upon the pleadings, but rather must set forth specific facts

demonstrating a genuine issue of material fact." ***Bank of America, N.A. v. Gibson***, 102 A.3d 462, 464 (Pa. Super. 2014); ***see also*** Pa.R.Civ.P. 1035.3(a)(1) (dictating that the adverse party may not rest upon the mere allegations or denials of the pleadings, but must identify "one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion"); ***Gruenwald v. Advanced Computer Applications, Inc.***, 730 A.2d 1004, 1009 (Pa. Super. 1999) ("It is the nonmoving party's responsibility to demonstrate that a genuine issue of material fact exists….") (citation omitted). "Bald unsupported assertions of conclusory accusations cannot create genuine issues of material fact." ***Nationwide Mut. Ins. Co. v. Lehman***, 743 A.2d 933, 937 (Pa. Super. 1999) (citation omitted).

Notably, "[a]verments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication." Pa.R.Civ.P. 1029(b). Absent certain exceptions which are not applicable here, "[a] general denial or a demand for proof … shall have the effect of an admission." ***Id.***; ***see also Gibson***, 102 A.3d at 466-67 (noting that responsive pleadings in a mortgage foreclosure action must contain specific denials). Moreover, "in mortgage foreclosure actions, general denials by mortgagors that they are without information sufficient to form a belief as to the truth of averments as to the principal and interest owing must be considered an admission of those facts." ***First Wis. Trust Co. v. Strausser***, 653 A.2d 688, 692 (Pa. Super. 1995). This is because the mortgagors and the mortgagee are the only parties with sufficient knowledge upon which to

base a specific denial. *See id.* (citing *N.Y. Guardian Mortg. Corp. v. Dietzel*, 524 A.2d 951, 952 (Pa. Super. 1987)); *see also Wilmington Sav. Fund Soc'y, FSB as Tr. of CSMC 2019-RPL5 Trust v. Mills*, No. 181 MDA 2023, unpublished memorandum at 7-8 (Pa. Super. filed Dec. 28, 2023) (rejecting the appellant's argument that the proposition established in *Strausser* — namely, that a general denial as to the amounts owed under a mortgage constitutes an admission — is inapplicable as to the executor of the estate of the mortgagor who "was not a party to payments on the mortgage").[9]

Here, PNC averred in its complaint that, as successor by merger to National City Bank, it is the current holder of the underlying mortgage in this matter. *See* Complaint at ¶¶ 1, 5; *see also id.* at Exhibit A (certifying that National City Bank merged with PNC). It further averred that in October of 2000, the Litwinoviches executed a mortgage in the principal amount of $31,000.00, as security for the HELOC Agreement, and that said mortgage was recorded in the Greene County Office of the Recorder of Deeds. *See id.* at ¶ 4. Copies of the HELOC Agreement and the Mortgage are attached to PNC's Complaint. *See id.* at Exhibit B; *id.* at Exhibit C. SLV effectively admitted the foregoing averments by failing to specifically deny them. *See* Pa.R.Civ.P. 1029(b); Answer, 2/1/23, at ¶¶ 1, 4-5 (containing only boilerplate

---

[9] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

language generally denying the corresponding averments in the Complaint, *e.g.*, "SLV is without knowledge, information or recollection sufficient to form a belief as to the truth or falsity of the averments[;]" "Specific proof thereof is demanded at trial[;]" "the averments … make reference to a document that speaks for itself, and [SLV] denies any mischaracterization thereof"). PNC also asserted, and SLV admitted, that SLV is now the current owner of the Mortgaged Premises. **See** Complaint at ¶ 6; Answer at ¶ 6; **see also** SLV's Response to Renewed Motion for Summary Judgment at 8 (acknowledging that, as a successor to the prior owners of the Mortgaged Premises, it is bound by the obligations of the Mortgage).

Additionally, PNC stated that the Mortgage is in default "for failing to tender payments when due[,]" Complaint at ¶ 7, and that the total amount due and owing at the time it filed its complaint was $33,575.09, **id.** at ¶ 11. SLV provided the following responses to these allegations:

> 7. Denied as stated. By way of further Answer, to the extent that this paragraph contains conclusions of law, no response thereto is required under the Pennsylvania Rules of Civil Procedure. To the extent that the averments in this paragraph are deemed factual, [SLV] specifically denies said averments. Specific proof is demanded at trial. By way of further Answer, the averments in this paragraph make reference to a document that speaks for itself, and [SLV] denies any mischaracterization thereof.
>
> ***
>
> 11. Denied as stated. By way of further Answer, it is specifically denied that the amount [PNC] has characterized as "the amount due and owing" represents a true and accurate accounting of the credits and/or debits applicable to the subject account, to the extent any such credits and/or debits

- 24 -

> exist. Specific proof of all components of [PNC's] demand amount, including interest, fees of any kind and all debits and/or credits, is demanded at trial. By way of further Answer, to the extent that this paragraph contains conclusions of law, no response thereto is required under the Pennsylvania Rules of Civil Procedure. To the extent that the averments in this paragraph are deemed factual, [SLV] specifically denies said averments. Specific proof is demanded at trial.

Answer at ¶¶ 7, 11.

Because SLV's responses again consist mostly of boilerplate language constituting general denials and it failed to articulate specific reasons as to why the allegations in paragraphs 7 and 11 of the complaint are not true, we conclude that SLV has effectively admitted these allegations as well. *See* *Jones v. Dubuque Fire & Marine Inc. Co.*, 176 A. 208, 209 (Pa. 1934) (determining that a statement was an insufficient denial where it "simply denied [the] averment without giving any reason or any figures to contradict the statement"). Hence, the essential elements of PNC's mortgage foreclosure claim are deemed admitted, entitling it to summary judgment. *See Gerber*, *supra*.

Notwithstanding, we observe that in support of SLV's argument that genuine issues of material fact persist, SLV only makes bald, unsupported, conclusory accusations against PNC. *See Lehman*, 743 A.2d at 937 ("Bald unsupported assertions of conclusory accusations cannot create genuine issues of material fact."). It fails to provide any specific examples of inaccuracies in the account statements provided by PNC, nor does it point to any evidence in the record to contradict PNC's assertion that the Mortgage is

in default. **See** Pa.R.Civ.P. 1035.3(a)(1). Thus, SLV failed to meet its burden to identify any genuine issue of material facts that would preclude the entry of summary judgment. **See Gibson**, **supra**; **Gruenwald**, **supra**.

Whereas, based on our review, we discern that PNC's allegation regarding the default on the Mortgage to be adequately supported by the record. For example, the account statements included in PNC's supplemental production of documents reflect that, as of April 25, 2005, there was a $0.00 balance on the HELOC. **See** Appendix in Support of Renewed Motion for Summary Judgment at Exhibit 4 ("Supplemental Document Production") at 23. However, the statement for the period ending on June 24, 2005, reflects two withdrawals that the Litwinoviches made on the HELOC, totaling $520.82. **Id.** at 24. The dates and reference numbers for each of these transactions are included in the statement. **Id.** The supplemental documents reveal that, over the course of the next fifteen years, the Litwinoviches continued to withdraw against the HELOC and to make payments towards the outstanding balance, until the HELOC was maxed out in March of 2020. **See generally id.** at 25-518; **see also id.** at 518 (indicating $0.00 available credit). There is no record of any further payments on the account from that point forward. **See generally id.** at 522-710. PNC also produced an affidavit of a PNC employee, declaring that the total amount due and owing on the Mortgage as of May 29, 2024, was $38,082.74. **See id.** at Exhibit 5 ("Affidavit of Amount Due and Owing") at ¶ 3.

Thus, viewing the record in the light most favorable to SLV, the nonmoving party, we discern no abuse of discretion or error of law in the trial court's determination that there were no genuine issues of material fact that would preclude the entry of summary judgment. **See Murray**, **supra**; Order, 10/31/24, at 2.[10]

IV. *Successor Owner Status*

Finally, SLV claims that "the trial court failed to adequately consider or acknowledge the specific legal status of SLV as a purchaser of the [Mortgaged Premises] at an upset tax sale, which fundamentally distinguishes SLV's position from that of the original borrowers…." SLV's Brief at 40. While SLV acknowledges that it purchased the Mortgaged Premises subject to PNC's mortgage lien, **see id.** at 41 (citing **In re Balaji Investments, LLC**, 148 A.3d 507, 510 (Pa. Cmwlth. 2016) (noting that property purchased at upset tax sale is acquired "subject to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien not included in upset price")), it avers that it did not assume personal liability for the Litwinoviches' debt. **See id.** (noting that SLV was not a party to the original HELOC Agreement and never assumed personal responsibility for the underlying debt).

_____

[10] To the extent that SLV argues that the trial court erred in relying on "PNC's self-serving affidavit in violation of the **Nanty-Glo** Rule[,]" we deem this claim waived due to SLV's failure to include the issue in its "Statement of the Questions Involved." **See** Pa.R.A.P. 2116(a); **Wirth**, **supra**; SLV's Brief at 36-39; **see also Borough of Nanty-Glo v. Am. Surety Co. of N.Y.**, 163 A. 523 (Pa. 1932).

- 27 -

This distinction is of no moment, as PNC did not seek, nor was it granted, an *in personam* judgment. PNC specifically requested that the trial court "enter a [j]udgment **in rem** against [SLV] and for the foreclosure and sale of the premises." Brief in Support of Renewed Motion for Summary Judgment at 4 (unnumbered; emphasis added); **see also** Order, 10/31/24, at 3 (granting PNC's renewed motion for summary judgment); Complaint at 3 (demanding "[j]udgment, **in rem only**, in mortgage foreclosure") (emphasis added). In fact, "[i]t is well-established that an action in mortgage foreclosure is strictly *in rem* and thus may not include an *in personam* action to enforce personal liability." **Rearick v. Elderton State Bank**, 97 A.3d 374, 383 (Pa. Super. 2014) (citation omitted); **see also id.** (noting that "the purpose of a judgment in mortgage foreclosure is solely to effect a judicial sale of the mortgaged premises") (citations omitted). Hence, no relief is due on this claim.[11]

_____

[11] SLV further argues in its brief that its status as a tax sale purchaser "creates enhanced obligations for PNC to provide clear notice and information about the alleged debt[,]" SLV's Brief at 43, and that the trial court's failure to consider SLV's unique informational needs "effectively deprived SLV of a meaningful opportunity to defend its property interest," **id.** at 44. We are constrained to deem this argument waived due to SLV's failure to include this issue in its "Statement of the Questions Involved." **See** Pa.R.A.P. 2116(a); **Wirth**, **supra**.

Likewise, to the extent that SLV argues that the "cumulative effect" of PNC's statutory violations, its discovery misconduct, the persistence of genuine factual disputes, and the trial court's procedural missteps precludes summary judgment, we deem this issue waived due to SLV's failure to include this issue in its "Statement of the Questions Involved." **See** Pa.R.A.P.
*(Footnote Continued Next Page)*

Accordingly, we affirm the trial court's October 31, 2024 order granting summary judgment in favor of PNC.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>1/15/2026</u>

---

2116(a); **_Wirth_**, **_supra_**. Notwithstanding waiver, we would conclude that our disposition in this matter renders this issue moot. **_See In re J.G._**, 320 A.3d 1286, 1290 (Pa. Super. 2024) ("Generally, this Court will not decide moot or abstract questions.").